# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**FRANK CUMMINS**                                                           **PLAINTIFF**

**V.**                      **CASE NO.: 3:14CV00288 BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Cummins appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  For reasons that follow, the decision of the Commissioner is reversed and remanded.

## I.      Background

On October 2, 2011, Mr. Cummins protectively filed for benefits due to a back injury, arthritis, and nerve damage to his leg.  (Tr. 238)  Mr. Cummins alleged disability beginning on March 1, 1998.  (Tr. 239)  An Administrative Law Judge ("ALJ") held a hearing on April 22, 2014, and Mr. Cummins appeared with his lawyer.  At the hearing, the ALJ heard testimony from Mr. Cummins and a vocational expert ("VE").  (Tr. 45-70)

The ALJ issued a decision on June 5, 2014, finding that Mr. Cummins was not disabled under the Act.  (Tr. 16-34)  On October 17, 2014, the Appeals Council denied Mr. Cummins's request for review, making the ALJ's decision the Commissioner's final

decision. (Tr. 1-3) On December 8, 2014, Mr. Cummins filed this appeal. (Docket entry #2) The parties have filed their briefs, and the case is ready for decision.[1]

Mr. Cummins was twenty-three years old on his alleged disability onset date and thirty-nine years old at the time of the hearing. (Tr. 32, 48) He graduated high school and completed approximately 21 hours of college credit. (Tr. 49) Mr. Cummins did not have any past relevant work at the level of substantial gainful activity. (Tr. 32, 66, 230)

## II.     Decision of the Administrative Law Judge[2]

The ALJ found that Mr. Cummins had not engaged in substantial gainful activity since March 1, 1998, and had the following severe impairments: degenerative disc disease of the lumber spine and a history of major depressive disorder. (Tr. 18) Mr. Cummins did not have an impairment or combination of impairments, however, that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (Tr. 19-20)

According to the ALJ, Mr. Cummins retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. He had the ability to stand or

---

[1] The parties have consented to the jurisdiction of a magistrate judge. (#4)

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g) and 20 C.F.R. § 404.1520(a)-(g).

[3] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 426.930(d), 416.925, and 416.926.

walk up to two hours in an eight-hour workday, but should avoid climbing and only occasionally perform remaining postural function. He should have no exposure to unprotected heights, was limited to work where interpersonal contact is incidental to the work performed, the complexity of one-to-two step tasks is learned and performed by rote, with few variables and requiring little judgment. His supervision should be simple, direct and concrete, and the work performed would be limited to unskilled tasks with an SVP-1 or SVP-2 that could be learned within thirty days. (Tr. 20-32) The VE testified that Inspector/Checker and Touch-Up Screener jobs were available with these limitations. (Tr. 66-67) Accordingly, the ALJ determined that Mr. Cummins could perform a number of jobs in the national economy and, therefore, was not disabled. (Tr. 33-34)

### III.    Analysis

#### A.    Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Mr. Cummins's Arguments for Reversal

Mr. Cummins asserts that the Commissioner's decision should be reversed because the ALJ: (1) omitted medical records; (2) committed "perjury" by denying the existence of omitted medical records; (3) "intentionally" withheld evidence to prevent Mr. Cummins from receiving benefits; (4) "tampered" with other medical records; (5) overturned an original finding of disability; (6) erred in not finding that Mr. Cummins met Listing 1.03 and 1.04; (7) erred by not giving controlling weight to Mr. Cummins's treating physician; (8) erred in the weight given to medical sources; (9) discriminated against Mr. Cummins based on his transgender status and alleged drug use; (10) took Mr. Cummins's testimony out of context; (11) erred in discrediting Mr. Cummins's testimony; (12) misrepresented the medical record; (13) failed to reopen Mr. Cummins's 2004 claim for benefits based on fraud; and (14) erred in his RFC assessment. (#15)

#### 1. Medical Records

Mr. Cummins argues that the ALJ omitted, intentionally withheld, and tampered with medical records. (#15, pp. 1-3) He also alleges that the ALJ committed perjury by denying the existence of omitted medical records. (#15, p. 2)

It appears from the record that some relevant medical records were not included in the record. Mr. Cummins's allegations of criminal wrongdoing, however, are not supported by the record and are inappropriate. Mr. Cummins is clearly unhappy with the

4

ALJ's adverse ruling, but there is no excuse for his unsupported accusations that the ALJ committed perjury and other wrongdoings.

Parties who appear pro se, such as Mr. Cummins, must be familiar with and follow the Federal Rules of Civil Procedure.  Local Rule 5.5(c)(2).  By filing his brief, Mr. Cummins certified that to the best of his knowledge, information, and belief, formed after a reasonable inquiry, his allegation of wrongdoing has evidentiary support.  FED.R.CIV.P. 11(b)(3).  There is no such support in Mr. Cummins's 40-page brief or the 721-page record.  Accordingly, Mr. Cummins is cautioned that future filings of this nature may be grounds for sanctions.

Mr. Cummins states that the record omits months of post-operative follow-up care, referrals to physical therapy and pain management, a "Certificate of Disability" from Dr. Terry Lichtor,[4] an initial evaluation prior to Mr. Cummins's 1998 back surgery, and a statement of work limitations from Mr. Cummins's treating physician Dr. Nathan Turney.  (#15, p. 2-3)  The Commissioner acknowledges the absence of one record of follow-up care.[5]  (#16, p. 5)

---

[4] Dr. Lichtor performed Mr. Cummins's second back surgery on December 23, 2011.  (Tr. 603-614)

[5] The Commissioner admitted the omission of one record she could not possibly deny, because, as Mr. Cummins points out, one of the Social Security Administration physicians referenced the record.  (Tr. 646)  What if the Social Security Administration physician had not referenced any omitted records? It is a little troubling that the Commissioner did not directly address the omission, or even the existence, of the other records.

The Commissioner urges the Court to disregard the fact that the one record is missing, arguing that Mr. Cummins failed to explain why these records were not part of the administrative record and by noting that all *submitted* documents were part of the record.  (#16, p. 6)  While neither acknowledging nor denying the existence of other records that Mr. Cummins says are missing, the Commissioner essentially argues that the absence of the records was harmless error, if error at all.  (#16, pp. 5-7)

An ALJ has a duty to develop a reasonably complete record.  *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  This is true even when a claimant is represented by counsel.[6]  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).  Although both parties bear some fault for the omission of relevant medical records, the point for purposes of this appeal is some medical records were not included in the record.  The question is whether that requires remand.

Apparently, Mr. Cummins's last appointment with Dr. Lichtor was in February of 2012, with visits for pain treatment, surgery, and referrals to pain management and physical therapy.  (Tr. 289)  The ALJ should have been on notice that Mr. Cummins saw Dr. Lichtor after the December 23, 2011 surgery.  This is important because the ALJ's opinion notes that Mr. Cummins did not see Dr. Lichtor for any post-operative follow-up.  (Tr. 28)

Regardless of fault, remanding a case for failure to develop the record is only warranted where such failure is unfair or prejudicial.  *Ellis v. Barnhart*, 392 F.3d 988, 994

---

[6] Mr. Cummins is proceeding pro se in this appeal, but he was represented by counsel in proceedings before the Commissioner.

(8th Cir. 2005). Assuming some medical records from the relevant time period exist, a proposition that the Commissioner neither admits nor denies, the omission of those records prejudiced Mr. Cummins in the assessment of his credibility, consideration of a treating physician's medical opinions, and the weighing of the medical evidence. Mr. Cummins's remaining arguments, however, have no merit.

### 2.      Original Finding of Disability

Mr. Cummins argues the ALJ erred by overturning an original finding of disability. (#15, pp. 3-4)  There was, however, no original finding of disability. The record Mr. Cummins cites in support of this argument is titled, "Notice of Disapproved Claim." (#15, p. 3; Tr. 78)  The beginning of the notice states:  "[Y]ou do not qualify for payments on this claim" and "you are not disabled." (Tr. 78)

### 3.      Listing 1.03 and 1.04

Mr. Cummins argues that the ALJ erred in not finding that he met Listing 1.03 and 1.04. (#15, pp. 6-11)  The record certainly evidences severe impairments resulting in extreme limitations, but it also shows that Mr. Cummins did not meet either Listing.

Among other requirements, to meet Listing 1.04 a claimant must show compromise of the nerve root. Mr. Cummins had scar tissue on his S1 nerve root, but his second surgery resulted in good decompression. (Tr. 612)  The record does not support a finding that Mr Cummins met Listing 1.04.

A claimant must have an inability to ambulate effectively to meet Listing 1.03. Mr. Cummins used a cane, but it was not prescribed by any physician. (Tr. 51-52) The medical record does not support a finding that he could not ambulate effectively.

### 4. Assessment of Medical Records and Sources

Mr. Cummins argues that the ALJ erred by not giving controlling weight to his treating physician's opinions and in the weight afforded medical sources. (#15, pp. 11-12) Mr. Cummins also argues that the ALJ misrepresented the medical record. (#15, pp. 25-33)

An ALJ must give controlling weight to a treating physician's medical opinions when they are supported by the record. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing references omitted). Here, one of the omitted medical records was apparently an October 6, 2011 statement by Mr. Cummins's treating physician, Dr. Turney, regarding work limitations. (#15, p. 3) Because this medical record does not appear in the record, neither the ALJ nor this Court could review it to determine its appropriate weight and relevance.

As the Commissioner notes, Dr. Lichtor performed Mr. Cummins's second back surgery after Dr. Turney provided his opinion. But the record also omits post-operative medical evidence from Dr. Lichtor. One of those records was a "Certificate of Disability." (#15, pp. 2-3) A statement that a claimant is "disabled" involves an issue reserved for the Commissioner, and is an application of the statute, so those statements are given little weight. *Ellis*, 392 F.3d at 994. But without the record, it is not clear

whether the doctor opined as to Mr. Cummins's "disability" or to his recommended maximum exertional levels. Because significant medical evidence from Mr. Cummins's treating physician and treating neurologist is not in the record, the Court cannot determine whether the ALJ properly assessed treating source opinions. This omission constitutes error.

The ALJ also gave "significant evidentiary weight" to the State agency non-examining physicians, noting the "detailed analyses" they provided. (Tr. 31-32) The Court assumes the ALJ was discussing, at least in part, the RFC assessment. The RFC assessment, however, was consistent with the ability to perform light work, that requires standing and walking for six hours in an eight-hour workday, with no postural limitations in climbing, crouching, or crawling. (Tr. 636-643) This assessment was made less than two months after Mr. Cummins's second back surgery. (Tr. 643)

In fact, the ALJ found that Mr. Cummins had a significantly lower RFC than noted by the non-examining doctor, who found that Mr. Cummins could perform light work with no postural limitations. On remand, the Commissioner should reevaluate the weight given to these records relative to the treating source records.

### 5. Discrimination

Mr. Cummins argues that the ALJ discriminated against him based on his transgender status and alleged drug use. (#15, pp. 12-16) The ALJ never mentioned transgender status, and Mr. Cummins confirmed it did not contribute to his alleged disability. (Tr. 61-63) Regarding drug abuse, Mr. Cummins takes issue with Dr. Barrett-Tuck's suspicion of methamphetamine use. The ALJ avoided reference to the allegation in his decision. (#15, p.

9

13) After thoroughly reviewing the record and the ALJ's decision, there is no evidence of discrimination based on transgender status or past methamphetamine use.

The ALJ did ask about drug use at the hearing, but the record raised questions about current marijuana use[7] and alcohol abuse.[8] In fact, a mental evaluation resulted in diagnostic impressions of cannabis and alcohol dependance. (Tr. 686)  At the hearing, Mr. Cummins testified that he no longer used drugs or drank alcohol. (Tr. 52-53)  The record contradicts Mr. Cummins's testimony about marijuana and alcohol use to some extent, but the ALJ did not use either as a basis for denying benefits or questioning Mr. Cummins's credibility. (Tr. 22-23, 52-53, 682-683, 686)  Instead, the ALJ commended Mr. Cummins for putting those issues behind him and noted in the decision that Mr. Cummins did not even allow alcohol in his home. (Tr. 22, 53)  The Court finds no merit in Mr. Cummins's allegation that discrimination played a role in the ALJ's decision.

### 6. Credibility of Mr. Cummins's Testimony

Mr. Cummins argues that the ALJ took his testimony out of context and erred in discrediting his testimony. (#15, pp. 16-25)  There are some inconsistencies in the record that gave the ALJ reason to question Mr. Cummins's credibility.

Mr. Cummins had a poor work history after his 1998 surgery, even though Dr. Hans C. Coester, the neurosurgeon who performed Mr. Cummins's first back surgery,

---

[7] During an evaluation, Mr. Cummins declined to answer questions about his marijuana use because the evaluation was related to his social security claim. (Tr. 682)  He did note, however, that marijuana use had no impact on his personal life or ability to work.

[8] Mr. Cummins seemed to indicate that a 2000 arrest for child abuse and a May, 2011 arrest for domestic disturbance were the result of binge drinking. (Tr. 682, 685)

thought that Mr. Cummins could return to regular work duty.  (Tr. 425)  Mr. Cummins stated that he could not cook or do laundry, but noted in a separate record that he could do these things if needed.  (Tr. 254, 683)  These are minor inconsistencies, but inconsistencies nonetheless.

The primary issue with the credibility assessment arises from the omitted records. The ALJ seemed to discredit Mr. Cummins for a lack of follow-up with Dr. Lichtor, when omitted records might show significant follow-up.  (Tr. 28)  The ALJ appeared to give the opinions of Dr. Barrett-Tuck, who saw Mr. Cummins on a single occasion, great significance.  (Tr. 27; 596-597)  Dr. Barrett-Tuck noted significant embellishment that far outweighed the objective medical evidence, declined to offer surgery, and suspected Mr. Cummins of methamphetamine use.  (Tr. 596-597)  A few weeks later, however, Mr. Cummins saw Dr. Lichtor.  Dr. Lichtor thought Mr. Cummins was an appropriate candidate for surgery and performed outpatient surgery on December 23, 2011.  (Tr. 603-614)  None of the follow-up records from Dr. Lichtor are in the record.  The missing records are from a relevant time period and would likely shed light on Mr. Cummins's condition.  It is an open question as to whether the missing records would bolster the ALJ's decision or support Mr. Cummins's cause.

Significantly, the ALJ stated that no physicians "involved in [Mr. Cummins's] care have ever opined that [his symptoms] would preclude completely the ability to perform substantial gainful work activity."  (Tr. 32)  Records from both Mr. Cummins's treating physician and his treating neurologist, the two most relevant medical sources, may well

11

speak to this issue. Because the records are missing, the Court cannot find that substantial evidence supports the decision.

### 7. Reopening 2004 Claim

Mr. Cummins argues that the ALJ fraudulently failed to reopen his 2004 claim for benefits. (#15, p. 27-28) This claim, however, like the claims of perjury, evidence tampering, intentional withholding of evidence, and intentional omission of medical records, finds no support in either Mr. Cummins's brief or in the record.

### 8. RFC Assessment

Mr. Cummins argues that the ALJ erred in his RFC assessment. (#15, pp. 33-35) The ALJ found that Mr. Cummins could perform sedentary work with additional, nonexertional limitations. (Tr. 20-32) This represents an extremely limited RFC. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(h)(4) ("'Sedentary work' represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations."). The current records supports this RFC finding. As noted, however, significant medical evidence from Mr. Cummins's treating physician and treating neurologist is not in the record. The absence of this evidence casts doubt on the validity of the RFC determination. Accordingly, the ALJ should reevaluate Mr. Cummins's RFC after considering the complete record.

**9. Remand**

Mr. Cummins argues that due to the allegations of discrimination and the possibility of retaliation, a neutral third party like this Court should ultimately determine disability. (#15, pp. 36-39) This Court is neither authorized nor qualified to make initial determinations of disability. Further, the Court cannot usurp the Social Security Administration's statutory authority. This Court is limited to reviewing the record made at the agency level.

**IV. <u>Conclusion</u>**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. The available evidence supports the Commissioner's findings, but the record is incomplete. The Commissioner erred in failing to collect medical records from Mr. Cummins's treating physician and neurologist. Accordingly, this Court will remand this case for further proceedings.

The Commissioner's decision is reversed and remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED, this 28th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE